(83 Misc. Rep. 93.)

## CLARKE v. WELLS.

(Supreme Court, Appellate Term, First Department. December 11, 1913.)

1. HUSBAND AND WIFE (§ 10*)—RELEASE BY HUSBAND.

A husband cannot release his wife's individual claims in the absence of authority from her.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 23, 34, 35, 38–46, 396, 398; Dec. Dig. § 10.*]

2. ANIMALS (§ 25*)—EVIDENCE—SUFFICIENCY.

In an action for keeping defendant's dogs, evidence *held* insufficient to sustain a verdict for plaintiff.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 50–53; Dec. Dig. § 25.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Annie S. Clarke against Mrs. Stewart B. Wells. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued November term, 1913, before LEHMAN, PAGE, and WHITAKER, JJ.

McCurdy & Yard, of New York City, for appellant.

Moses Weill, of New York City, for respondent.

LEHMAN, J. The plaintiff and her husband formerly resided in England, where they maintained dog kennels. Apparently the defendant knew them in England, and on July 19, 1911, the defendant's secretary wrote to the plaintiff's husband stating that the defendant offered him a position as chauffeur at $150 per month, with the use of "a very nice house which will be most comfortable in every way for you and your wife." A postscript to this letter stated:

"I should perhaps add that there will be plenty of room at your house for your dogs. If you declare to our custom inspectors that you are bringing them over for breeding purposes, you will not have to pay duty on them. They should be quite profitable in this country."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff and her husband thereupon came to America, their expenses being advanced by defendant, and immediately went to Spring Lake, where the defendant lived. They were there given the use of the house as promised. Upon their arrival, the defendant left some of her dogs with the plaintiff to be cared for, and, though plaintiff does not claim that the defendant agreed to pay any definite sum for their board, she does claim that the defendant agreed to pay her for their keep. The plaintiff further showed that the reasonable value of the board of dogs of the kind intrusted to her is $3 to $5 per week. Upon this evidence the plaintiff has recovered judgment for $500.

While the evidence presented by plaintiff is rather vague upon the point whether the contract for the dogs' keep was made with her individually, rather than as agent for her husband, still it is in my opinion prima facie sufficient to sustain her cause of action. This evidence could be directly contradicted only by the defendant, and the defendant, it is intimated because of her age and infirmity, did not take the stand. The trial justice thereupon, though apparently with some reluctance, gave judgment for the plaintiff.

[1, 2] In spite, however, of the fact that this evidence is not directly contradicted, the surrounding circumstances and the documentary evidence so completely impeach the plaintiff and her husband, and show so nearly beyond question that they have been paid all that is due them, that I feel the judgment should not be permitted to stand.

It appears that the plaintiff's husband never received a monthly check for $150, but received each month while he was in defendant's employ a check for $100, and the remaining $50 was paid to him or his wife in cash. The payment was made in this form by the defendant's secretary, at the defendant's request, and the plaintiff and her husband explain that this unusual form of payment was due to the fact that the defendant did not desire her sons and trustee to find out that she was paying her chauffeur more than $100. This explanation would be satisfactory, were it not for the fact that in May the defendant informed the plaintiff's husband that she would no longer require his services; that thereupon plaintiff's husband demanded that he continue to receive payment for the remainder of the year of service; and that plaintiff and her husband thereupon received payments in settlement of their claims, under circumstances which to my mind show clearly that their contention that the defendant was to pay board for her dogs in addition to the sum of $150 per month, stipulated as wages, is not true.

At that time the defendant paid to the plaintiff individually the sum of $250 by check, and that check bears across its face the words "in full to October 1st," and was indorsed by plaintiff with these words upon it. In addition, the plaintiff's husband had several interviews with the defendant's attorney, and agreed with him to accept the sum of $258.50 in payment of all claims, with the understanding that he was to be permitted to continue to occupy the house till October 1st. At that time he executed a general release, prepared by the defendant's attorney, which states:

"The undersigned, R. C. Clarke, now residing at Spring Lake, N. J. does hereby make affidavit as follows:

"Previous to October, 1911, I had a kennel in England, and believing that there was a better field for same in America I came here in October, 1911, with fourteen dogs.

"At my request Mrs. L. E. Wells of Spring Lake, N. J. (to whom I have previously sold dogs), loaned me money to pay the expenses of bringing my family and dogs to America.

"After arriving in this country I made the following arrangement with Mrs. Wells:

"My wife and myself were to take care of her dogs and I was to act as her chauffeur for one year, from October 23, 1911, for which we were to receive the use of a small cottage at Spring Lake and an amount of $150.00 cash per month.

"As Mrs. Wells no longer requires my services as chauffeur, and as I am offered another position, I hereby accept and acknowledge the receipt of $258.50 as payment in full for the services of both my wife and myself and hereby in consideration of the amount mentioned, the receipt of which is hereby acknowledged, I do entirely release Mrs. L. E. Wells from all claims of any nature which my wife or myself might have had against her.

"In witness thereof I have hereto set my hand and seal this twelfth day of June, 1912.                          [Signed]  Reuben Clarke.

"Witness: A. Kreusler."

It is true that this release is not binding upon plaintiff because it is not shown that her husband had any authority to release her individual claims; but it does directly impeach her husband's testimony as to the nature of his arrangements with the defendant, and, taken in connection with the fact that plaintiff herself received and indorsed a check made "in full to October 1st, 1912," shows with reasonable certainty, in spite of her claim to the contrary, that both she and her husband have received and accepted payment for all claims to that date.

Judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

WHITAKER, J., concurs.   PAGE, J., concurs in result.